[Crim. No. 25440. Second Dist., Div. Four. Apr. 28, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT STEFAN KRAUS, Defendant and Appellant.

COUNSEL

Peter L. Knecht, Berman & Glenn and Howard J. Berman for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FILES, P. J.—This is an appeal from an order of the superior court denying a defendant's motion to set aside a conviction based upon a plea of guilty to two counts of violating Penal Code section 288a.

By way of background to the discussion of the procedural issues, some mention of the defendant and his offenses is appropriate. Defendant was, at the time of the offenses, a financially successful businessman 30 years of age. His father was a psychiatrist practicing in Massachusetts. Defendant's own description of his offenses (and another uncharged occurrence) appears in a letter which he wrote to the probation officer who made the pre-sentence investigation:

"Generally speaking, I would wait for an attractive young lady to come into the parking lot. If she parked in an area where I thought we could not be seen, I would disconnect the wire to the ignition on her automobile. When she returned to her car I would approach her, show her the gun and ask her to move over. Sometimes I would ask for money as a ruse, but I never took any money because I didn't need any. I would then frighten her into oral copulation."

In order to explain what is before this court for review, it is necessary first to detail the procedural history of the case.

On October 9, 1973, an information was filed charging defendant with the following offenses: count I, assault with a deadly weapon (Pen. Code, § 245, subd. (a)), using a firearm within the meaning of Penal Code section 12022.5; count II, oral copulation (Pen. Code, § 288a) while armed within the meaning of Penal Code section 12022; count III,

attempted robbery (Pen. Code, §§ 664, 211) using a firearm; count IV, attempted robbery using a firearm; and count V, oral copulation armed with a pistol.

On October 30 defendant pleaded guilty to counts II and V. The reporter's transcript of the proceedings on that day are not in the record on appeal, but there is no contention that there was any lack of the advice and waivers required by *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. Following the plea the court appointed two psychiatrists to examine defendant.

At all times to and including the time of sentence, defendant was represented in the superior court by two reputable members of the criminal trial bar, who had been employed by defendant's father.

On January 7, 1974, defendant was before the court for sentence.

There was a discussion by court and counsel as to whether probation should be granted. Reference was made to the reports of the court-appointed psychiatrists, and the reports of others employed by defendant. At the request of defendant's counsel, the court heard an oral statement by defendant's father and by Dr. Coburn, a psychiatrist who had examined defendant. No request was made for presentation of other information or argument. At the conclusion of the hearing the court found that this was not a proper case for mentally disordered sex offender proceedings, denied probation, and sentenced defendant to state prison on each count, the terms to run concurrently. The allegations that defendant was armed were stricken and the other three counts of the information were dismissed.

No appeal was taken from that judgment.

On February 4, 1974, a new attorney of record filed on behalf of defendant a written motion "to vacate and set aside the judgment of conviction upon a plea of guilty" and "for a writ of error coram nobis." The notice specified 15 "grounds" of the motion, the general tenor of which was that (a) defendant was in a "disturbed mental state" and unable to understand the nature and consequences of his plea, (b) counsel had not represented defendant properly, (c) the probation report and one of the psychiatric reports contained misstatements, and (d) the sentence was unduly severe. Declarations of defendant's fiancee, his father and his mother were attached in support of the motion.

On February 7 a declaration by defendant was filed, particularizing his dissatisfaction with the proceedings and the conduct of his trial counsel. This declaration of defendant asserted that at the time he pled guilty he "was in a state of mental haze, tension, anxiety and confusion and unable to think clearly or understand the possible effects and consequences of his plea of guilty." The declaration concluded with a request that the court grant his petition as a petition for writ of error *coram nobis,* and permit him to withdraw his guilty plea.

A hearing on this motion was held on March 22, 1974. At that time the court considered the declarations which had been filed on behalf of defendant, together with the answering declarations of the deputy district attorney who had prosecuted the case, the two attorneys who had represented defendant, and an associate of one of those attorneys. The court also heard the testimony of the defendant's father, who presented to the court a letter from a Harvard law professor whom he had consulted. The motions were then taken under submission.

On March 25, 1974, the court made a minute order denying defendant's motion.[1] This order contained express findings to the effect that defendant was legally sane and able to understand the proceedings and to cooperate with his attorneys; that he "did have the competent assistance of experienced, well-prepared defense counsel; that the pleas had been voluntarily and intelligently made, that the sentencing proceedings were regular."

On May 15, 1974, defendant filed a notice of appeal from the order "made . . . on March 25, 1974 (1) denying defendant's motion to withdraw plea of guilty and to vacate judgment; (2) denying defendant's petition for writ of error *coram nobis;* (3) and denying defendant's application for certificate of probable cause."

■ We first deal with the Attorney General's motion to dismiss the appeal made upon the ground that the order of March 25, 1974, was not appealable. The Attorney General contends "The appeal must be dismissed as it is from the denial of a motion to withdraw a guilty plea and there is no certificate of probable cause for appeal in the record."

[1]The operative portion of the order was in the following language:
"WHEREFORE, It is Ordered:
"Defendant's Motion to Withdraw Plea of Guilty and Vacate Judgment is denied.
"Defendant's Petition for Writ of Error Coram Nobis is denied.
"Defendant's Application for Certificate of Probable Cause for Appeal (Section 1237.5 Penal Code) is denied.
"Defendant's Motion for Bail on Appeal is denied."

This characterization of the appeal is inaccurate as the foregoing statement of facts demonstrates. The appeal is from the denial of a motion to set aside a judgment. The only statutory requirement for a certificate of probable cause is in Penal Code section 1237.5 which refers only to appeals "from a judgment of conviction."[2]

In this case an appeal from the judgment, if taken and perfected in accordance with the provisions of Penal Code sections 1237 and 1237.5 and rule 31 (d), California Rules of Court, would have been an exercise in futility. Appeals are heard and decided upon the record made in the trial court leading up to the order or judgment appealed from. (*People* v. *Strickland*, 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].) The matters urged by defendant as grounds for setting aside his conviction do not appear in the record made in the trial court prior to judgment. Defendant is relying wholly upon matters raised and submitted to the court after judgment. The record made prior to judgment contains no arguable ground of reversal, as defendant's counsel doubtless recognized when he prepared his attack by way of a post-judgment motion, supported by declarations alleging matters not theretofore submitted to the court.

The proceeding in the superior court, heard March 22, 1974, was in substance an application for a writ of error *coram nobis*. Historically, *coram nobis* was a civil proceeding, but in modern procedure " 'the office of the writ of *coram nobis* is exercised by a mere motion to set aside a judgment.' " (*In re Paiva* (1948) 31 Cal.2d 503, 510 [190 P.2d 604].) Thus the Supreme Court has now said that "[a] petition for a writ of *coram nobis* is the equivalent of a motion to vacate a judgment." (*People* v. *Griggs* (1967) 67 Cal.2d 314, 316 [61 Cal.Rptr. 641, 431 P.2d 225].)

Such a motion to set aside a judgment of conviction is considered a part of the criminal case, and an order of the trial court denying such a motion may be appealable by the defendant under Penal Code section 1237, subdivision 2 (formerly subd. 3), as an "order made after judgment, affecting the substantial rights of the party." (*In re Paiva, supra,* 31 Cal.2d 503; *In re Horowitz,* 33 Cal.2d 534, 537 [203 P.2d 513].)

[2]Penal Code section 1237.5: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, except where:

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

Although the grounds of post-judgment relief by *coram nobis* or motion to vacate are strictly limited, it is possible for defendant, upon a proper showing, to employ such a motion to attack a judgment based upon a plea of guilty, and, if the ruling is adverse, to appeal the order of the trial court. (See, e.g., *People v. Shipman* (1965) 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993], where the motion to vacate the judgment was based upon the defendant's contention that he was insane at the time he pleaded guilty.)

In *People v. Golden* (1966) 245 Cal.App.2d 512 [54 Cal.Rptr. 91], the court pointed out that Penal Code section 1237.5 placed a limitation upon judgment appeals but not on appeals from the denial of *coram nobis*. The Attorney General has not cited any case which holds to the contrary. During the nine years since the enactment of section 1237.5, the Courts of Appeal have entertained a considerable number of appeals from superior court orders denying motions to vacate judgments based upon guilty pleas, without any suggestion that a certificate of probable cause was required.[3]

In *People v. Griggs, supra,* 67 Cal.2d 314, the defendant, who had pleaded guilty, made a motion in the superior court to set aside the judgment, which motion was denied. He then sought appellate review of the superior court order by mailing a new petition to the Court of Appeal for the wrong district, which sent it back. The Supreme Court granted relief by ordering that the paper which the defendant had mailed be deemed a timely notice of appeal and by directing the clerk of the superior court "to take whatever steps are necessary to perfect the appeal." The Supreme Court said nothing about any necessity for a judge's certificate of probable cause as a prerequisite to that appeal.

In support of the contention that section 1237.5 is applicable here, some language in *People v. Ribero,* 4 Cal.3d 55, 62-64 [92 Cal.Rptr. 692,

---

[3]Published opinions in such cases include the following: *People v. Vaughn,* 243 Cal.App.2d 730, 735 [52 Cal.Rptr. 690]; *People v. Esparza,* 253 Cal.App.2d 362 [61 Cal.Rptr. 167]; *People v. Williams,* 253 Cal.App.2d 560 [61 Cal.Rptr. 323]; *People v. Sumner,* 262 Cal.App.2d 409 [69 Cal.Rptr. 15]; *People v. Phillips,* 263 Cal.App.2d 423 [69 Cal.Rptr. 675]; *People v. Hemphill,* 265 Cal.App.2d 156 [71 Cal.Rptr. 397]; *People v. Crouch,* 267 Cal.App.2d 64 [72 Cal.Rptr. 635]; *In re Collins,* 271 Cal.App.2d 195 [76 Cal.Rptr. 622]; *People v. Buggs,* 272 Cal.App.2d 285 [77 Cal.Rptr. 450]; *People v. Cortez,* 13 Cal.App.3d 317, 332 [91 Cal.Rptr. 660].

In the *Sumner* opinion, the court explained in depth the power of the appellate court to dismiss appeals as frivolous, and reached the conclusion that the appeal there under consideration should be dismissed as frivolous. That discussion would have been unnecessary if the court had believed that the right of appeal was limited to cases in which the trial court had certified probable cause.

480 P.2d 308], is cited. That case involved an attempt by a defendant to appeal from a judgment. Ribero had pleaded guilty and then, prior to judgment, had moved to withdraw his plea upon the ground he had been under the influence of drugs. That motion was denied and defendant was sentenced. The opinion of the Supreme Court explains why a certificate of probable cause was required in Ribero's case, as distinguished from *People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881], where a certificate was not required.

In *Ward,* the court had held that compliance with section 1237.5 was not required where the defendant asserted only errors in the trial court proceedings which were subsequent to the guilty plea. In *Ribero,* the appellant claimed he was not required to comply with section 1237.5 because he was asserting error in an order made subsequent to the plea. The Supreme Court rejected that contention, stating: "In determining the applicability of section 1237.5, the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." (4 Cal.3d at p. 63.) That statement refers to the applicability of section 1237.5 to judgment appeals, such as the one then before the court. It was a rejection of Ribero's contention that the *Ward* principle permitted him to move to set aside the plea and subsequently appeal from the judgment without complying with section 1237.5. *Ribero* cannot be read as holding that section 1237.5 applies to appeals from post-judgment *coram nobis* proceedings.[4]

*People* v. *Chew* (1971) 16 Cal.App.3d 254, 257 [94 Cal.Rptr. 83], contains language discussing the *Ribero* opinion in relation to a *coram nobis* proceeding, but the *Chew* court did not have before it the issue presented here.

In *Chew,* the defendant pleaded guilty to a narcotics offense in 1965 and was committed civilly as an addict. In 1970 the court terminated the

---

[4]There is a practical basis for the distinction made by the Legislature. The purpose of section 1237.5 is to preclude a flood of frivolous appeals from judgments based on guilty pleas, by requiring the defendant to state at the outset what he regards as a reviewable issue. (See *In re Brown* (1973) 9 Cal.3d 679, 683 [108 Cal.Rptr. 801, 511 P.2d 1153].) There are other procedural barriers to the abuse of the *coram nobis* procedure. Since the pleading requirements are strict, "it will often be readily apparent from the petition and the court's own records that a petition for *coram nobis* is without merit and should therefore be summarily denied." (*People* v. *Shipman, supra,* 62 Cal.2d at p. 230; accord: *In re Nunez* (1965) 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998].) If the petitioner takes an appeal in a case where the trial court properly denied the petition summarily for lack of supporting statements of fact, the appellate court may summarily dismiss the appeal. (*People* v. *Thornton* (1965) 233 Cal.App.2d 1 [43 Cal.Rptr. 691]; accord: *People* v. *Lampkin* (1968) 259 Cal.App.2d 673, 681 [66 Cal.Rptr. 538]; *People* v. *Hemphill, supra,* 265 Cal.App.2d 156, 160.)

civil commitment and pronounced judgment in the criminal case, sentencing Chew to state prison. From that judgment Chew appealed. While that appeal was pending, Chew filed in the appellate court an original petition for writ of error *coram nobis,* attacking the validity of his guilty plea upon the grounds that it had resulted from his ignorance, his inability to understand English and the misrepresentations of his attorney.

The Court of Appeal held that Penal Code section 1237.5 was not applicable to the appeal because the purpose of the appeal was to challenge proceedings conducted subsequent to the guilty plea. The court also concluded that Chew was not entitled to file an original *coram nobis* proceeding in the appellate court because he had not sought a certificate of probable cause in the trial court. In reaching that conclusion, the court appears to have relied upon some language in *Ribero.* The *coram nobis* proceeding was therefore dismissed.

We need not consider whether the *Chew* opinion was correct in holding that Penal Code section 1237.5 is a limitation upon the power of an appellate court to entertain an original proceeding to attack a judgment based upon a guilty plea. For our purpose it is sufficient to point out that the *Chew* case did not involve an appeal from an order of the superior court denying *coram nobis.*

*People* v. *Nigro* (1974) 39 Cal.App.3d 506, 509-510 [114 Cal.Rptr. 213], contains language which, read out of context, might carry the implication that an appeal from a post-judgment order may be subject to section 1237.5, but that was not the issue which was decided there.

In *Nigro* the defendant pleaded nolo contendere, after which the court made an order granting probation. This order was a judgment for the purpose of appeal. Two weeks later Nigro moved to set aside his plea. A hearing was held in the superior court, after which, on February 22, 1973, the court denied the motion to withdraw the plea and also denied Nigro's request for a certificate of probable cause pursuant to Penal Code section 1237.5. On February 23, 1973, the superior court made an order modifying the conditions of probation.

Nigro then filed a notice which stated that he appealed from the order made "on February 23, 1973." The opinion of the appellate court declared that the order of February 23 was the only order from which Nigro had purported to appeal, and criticized him for using the occasion

to seek review of the other order. The superior court clerk was also criticized for preparing a record which went beyond the proceedings of February 23. The appellate court then stated that, in the interest of judicial economy, it would treat the appeal as an application for a writ of mandate to compel the superior court to issue a certificate of probable cause. Although the opinion is not explicit, the appellate court may have been considering a certificate authorizing an appeal from the order granting probation since this was the appealable "Judgment of conviction." The appellate court then concluded that the superior court had properly refused to issue the certificate.

What is clear is that the *Nigro* case was not an appeal from an order denying a motion made after judgment to set aside the judgment.

■ The Attorney General also contends that the trial court's order denying *coram nobis* relief was not appealable because the defendant's petition was so defective that it raised no substantial issue, and hence defendant's substantial rights were not affected within the meaning of subdivision 2 of section 1237, citing *People* v. *Hemphill, supra,* 265 Cal.App.2d at page 160, and *People* v. *Lampkin, supra,* 259 Cal.App.2d at page 681. In each of those cases the superior court had summarily denied the post-conviction motion because it lacked the detailed factual averments which were necessary to invoke the jurisdiction of the court; and the appellate court held that under such circumstances the denial was not subject to appeal. In the case at bench the superior court liberally interpreted the defendant's motion and supporting papers as being adequate to justify a hearing. Under the circumstances, we accept the trial court's determination to that effect. We therefore are in a position to review the issues raised and determined by the trial court on defendant's post-judgment motion.

The trial court's order, and the notice of appeal, make redundant references to the "motion to withdraw plea of guilty and vacate judgment" and the petition "for writ of error *coram nobis,*" which we regard as a single motion and a single order.

The trial court's order also purported to deny defendant's application for a certificate of probable cause for appeal under Penal Code section 1237.5, and the notice of appeal purports to appeal from that part of the order also. The record does not indicate that defendant ever applied for such a certificate. Irrespective of that, an order denying such a certificate of probable cause is not appealable as it does not come within the

provisions of section 1237, which designates what orders are appealable. (*People* v. *Nigro, supra,* 39 Cal.App.3d at p. 510; see *In re Brown, supra,* 9 Cal.3d at p. 683.) The attempted appeal from the denial of the supposed "application for certificate of probable cause for appeal" must be dismissed.

■ The contentions of defendant's post-judgment counsel, going to the merits of the appeal, require only brief comment. The defect in defendant's brief on appeal is that it ignores the counterdeclarations submitted by the People and the facts known judicially by the trial judge who had heard the prejudgment proceedings.

Defendant's assertion that he "was in a state of mental haze, tension, anxiety and confusion and unable to think clearly" at the time of his plea falls far short of showing he was incompetent to participate in his own defense. The two psychiatric reports in the record on appeal contain no support for this belated claim that defendant was mentally incapacitated.

Defendant's assertion that he did not understand the consequences of his plea are directly refuted by the prosecution's declarations, which show that the range of punishments was fully explained in open court at the time of plea. The declaration of defendant's trial attorney shows defendant had been advised that confinement in Atascadero was the best result he could expect, and prison was a possibility. The declarations show that the guilty plea was part of an agreement which included withdrawal of the charge that defendant was armed at the time of commission, which charge, if proved, would have subjected him to additional imprisonment under Penal Code section 12022.

The criticism of defendant's trial counsel by defendant and his parents, taken at face value, reflects only the personal views of these individuals, rather than any incompetence of the attorneys. The record as a whole adequately supports the trial court's finding that defendant had "the competent assistance of experienced, well-prepared defense counsel."

After this appeal had been briefed, still another attorney was substituted to make the oral argument. This new advocate raised the point that the probation report had not been delivered to trial counsel two days prior to the hearing, as is required by Penal Code section 1203. That argument is worth mentioning mainly to contrast the magnitude of defendant's forensic efforts with the barrenness of his cause.

The declaration of defendant's trial attorney (submitted in connection with the motion heard March 22, 1974) states that on Friday, January 4, he was informed of what the probation officer's recommendation would be. He worked over the weekend preparing the argument he would make, and received the written report prior to the hearing January 7. The declaration states that although defendant wished the hearing postponed, he (counsel) concluded a continuance would be a waste of the court's time, and the best interest of the client would be served by going forward at that time. The argument made by defendant's attorney on January 7 demonstrated a thorough understanding of the probation report and the other material which was before the court for consideration. Nothing here gives the slightest basis for the criticism directed towards trial counsel.

The Attorney General's motion to dismiss the appeal is denied. The order of the superior court denying defendant's motion to vacate the judgment is affirmed. The attempted appeal from the order denying a certificate of probable cause under Penal Code section 1237.5 is dismissed.

Kingsley, J., and Dunn, J., concurred.